UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
OFFICE OF THE ATTORNEY GENERAL

MATTHEW INGRAM, JR.,

     Plaintiff,

v.                                    Civil Action
                                      No. 06-1262 (EGS)

DISTRICT OF COLUMBIA

     Defendant.

Wednesday
August 22, 2007

DEPOSITION OF:

EUGENE MILLER

called for examination by counsel for the
District of Columbia, pursuant to notice of
deposition, in the Office of the Attorney
General, 441 4th Street, N.W., Washington,
D.C., when were present on behalf of the
respective parties:

1      Q      The materials that you reviewed

2   subsequent of the preparation of your report

3   in this case, have those materials informed

4   your opinions in this case in any significant

5   way beyond what's already contained in the

6   report?

7      A      Yes.

8      Q      Okay.  How so?

9      A      All right, the fact that the

10   Department of Corrections was aware long

11   before this incident of Mr. Reese's criminal

12   charges and conviction.  Which I had not known

13   before and also, I learned from Major

14   Waldren's deposition that on several occasions

15   Mr. Reese was taken away from the assignment

16   in the cell block and his mace was taken away

17   from him because of excessive use. And neither

18   one of those I knew before.

19           And then I also learned a few

20   things about the cameras and that type of

21   thing.  Some details about that both from

22   reading Major Waldren, his deposition and

1    Lieutenant Hendrix' deposition.

2              But I would say the two major

3    things I learned were the prior knowledge of

4    Mr. Reese's conviction on two counts of making

5    threats and also the fact that I guess on

6    several occasions he had been taken out of

7    that particular cell block and his mace had

8    been taken away from him because of excessive

9    use.

10      Q    The prior knowledge of the

11   Department of Sergeant Reese's criminal

12   convictions from what you reviewed, how long

13   prior to the incident in this case did the

14   Department have that knowledge.

15      A    Oh, God, excuse me, let's see.

16   Yes, again, I have no pens, can I use those?

17      Q    Sure.

18      A    Okay.  All right, Mr. Reese was

19   found guilty on two counts of attempted

20   threats in the 18th of June of 2004.  And I am

21   taking this from official documents.

22      Q    Sure

1          A      That you provided.  The same day,

2    he gave Warden Harrison at the jail papers

3    about the offenses.  All right, the letter,

4    the Official Notice of Intent to Dismiss Mr.

5    Reese from the Director was dated May 8th of

6    2006.  And also, apparently, just after Mr.

7    Reese was arrested, Lieutenant Har-- On

8    January 14th of 2004, Lieutenant Harrison

9    attended a court hearing and subsequently

10   informed him that he could not carry a weapon.

11   So   Lieutenant  Harrison  at  least,  his

12   supervisor, was aware that he at least had

13   been charged, so charged.  And apparently the

14   Warden was aware immediately or very soon

15   after his conviction.

16         Q      And  the  occasion  or  multiple

17   occasions you mention where Sergeant Reese was

18   taken out of the unit because of excessive use

19   of mace, was that because of allegations of

20   excessive use?  Or was there some indication

21   in what you reviewed that there was a finding

22   prior to this incident that Sergeant Mace had

1    actually used excessively the mace?

2        A    I don't know sir, Major Waldren,

3    and I'll even cite it.  It's pages 77 and 78.

4            MR.  ALLEN:  You  mean  Sergeant

5    Reese.  You said Sergeant Mace.

6            MR.  SCHIFFERLE: I meant, I did.

7    Sergeant Reese.

8            (Laughter)

9            MR.  MILLER:   Major Waldren refers

10   to this onpage 77 and 78.  He doesn't go into

11   detail, he just says in several occasions they

12   had taken the mace.   The mace has been taken

13   away from Sergeant Reese because of excessive

14   use.  He doesn't say whether it's allegation

15   or not but I would assume it's an allegation.

16   It doesn't say it's an allegation, but he does

17   his best, he just says it was taken away.

18            BY MR. SHIFFERLE:

19       Q    And you also mention based on what

20   you  subsequently  reviewed.   Subsequent  to

21   preparing your report, that you learned some

22   details  about  the  cameras  or  the  camera

1    system?

2         A     Yes.

3         Q     Any of those details you learned

4    significant to your opinions in this case?

5         A     It has reinforced my opinion.  I

6    mean, they're not, the fact that they didn't

7    have a camera ready to shoot this thing at

8    all.  You know, that they had several cameras

9    and out of three cameras only one was working

10   and when they went to get it they did not take

11   the one that's working.  They took one that

12   wasn't working and that type of thing.  And

13   also, one other thing I should mention.  In

14   Major Waldren's deposition he's quite, well,

15   he's quite clear about several things.  He

16   discussed the cameras.

17            Also he's quite clear that the

18   failure to photograph the injuries of Mr.

19   Ingram was a violation of the jail's policy

20   and procedure and would add it is also a

21   violation of general accepted practice in the

22   field.  And also, Major Waldren states that if

1    he had known about the criminal convictions of

2    Sergeant Reese, that Sergeant Reese should not

3    have been working in the jail.

4         Q    Okay, let's get this marked and

5    cover up the exhibit sticker--

6         A    And if you'd like by the way,

7    excuse me, but again just so I'm being quite

8    specific with you, his opinion that Mr. Reese

9    should not have been working in the jail was,

10   I believe, on page 11 of his deposition and

11   should not have been working in the unit is I

12   believe on page 13 of his deposition.

13        MR. ALLEN: Could we just have a

14   moment for just a minute.  Can I borrow him

15   for a sec.

16        MR. SCHIFFERLE: Sure, sure.

17        MR.   MILLER:   With   Lieutenant

18   Hendrix what I found significant was he

19   discusses the cameras and how goofed up the

20   cameras were and whatever on pages 27, 32 and

21   34.  He specifically states on page 36 and 37

22   how it's policy to photograph inmate injuries