UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
OFFICE OF THE ATTORNEY GENERAL

| | |
|---|---|
| MATTHEW INGRAM, JR., | |
| Plaintiff, | |
| v. | Civil Action No. 06-1262 (EGS) |
| DISTRICT OF COLUMBIA | |
| Defendant. | |

Wednesday
August 22, 2007


DEPOSITION OF:

EUGENE MILLER

called for examination by counsel for the District of Columbia, pursuant to notice of deposition, in the Office of the Attorney General, 441 4th Street, N.W., Washington, D.C., when were present on behalf of the respective parties:

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433   WASHINGTON, D.C.  20005-3701   www.nealrgross.com

1    Q    The materials that you reviewed
2    subsequent of the preparation of your report
3    in this case, have those materials informed
4    your opinions in this case in any significant
5    way beyond what's already contained in the
6    report?
7    A    Yes.
8    Q    Okay.  How so?
9    A    All right, the fact that the
10   Department of Corrections was aware long
11   before this incident of Mr. Reese's criminal
12   charges and conviction.  Which I had not known
13   before and also, I learned from Major
14   Waldren's deposition that on several occasions
15   Mr. Reese was taken away from the assignment
16   in the cell block and his mace was taken away
17   from him because of excessive use.  And neither
18   one of those I knew before.
19              And then I also learned a few
20   things about the cameras and that type of
21   thing.  Some details about that both from
22   reading Major Waldren, his deposition and

1  Lieutenant Hendrix' deposition.

2  But I would say the two major
3  things I learned were the prior knowledge of
4  Mr. Reese's conviction on two counts of making
5  threats and also the fact that I guess on
6  several occasions he had been taken out of
7  that particular cell block and his mace had
8  been taken away from him because of excessive
9  use.

10  Q   The prior knowledge of the
11  Department of Sergeant Reese's criminal
12  convictions from what you reviewed, how long
13  prior to the incident in this case did the
14  Department have that knowledge.

15  A   Oh, God, excuse me, let's see.
16  Yes, again, I have no pens, can I use those?

17  Q   Sure.

18  A   Okay. All right, Mr. Reese was
19  found guilty on two counts of attempted
20  threats in the 18th of June of 2004. And I am
21  taking this from official documents.

22  Q   Sure

1        A      That you provided.  The same day,
2   he gave Warden Harrison at the jail papers
3   about the offenses.  All right, the letter,
4   the Official Notice of Intent to Dismiss Mr.
5   Reese from the Director was dated May 8th of
6   2006.  And also, apparently, just after Mr.
7   Reese was arrested, Lieutenant Har-- On
8   January 14th of 2004, Lieutenant Harrison
9   attended a court hearing and subsequently
10  informed him that he could not carry a weapon.
11  So Lieutenant Harrison at least, his
12  supervisor, was aware that he at least had
13  been charged, so charged.  And apparently the
14  Warden was aware immediately or very soon
15  after his conviction.
16       Q      And the occasion or multiple
17  occasions you mention where Sergeant Reese was
18  taken out of the unit because of excessive use
19  of mace, was that because of allegations of
20  excessive use?  Or was there some indication
21  in what you reviewed that there was a finding
22  prior to this incident that Sergeant Mace had

1  actually used excessively the mace?

2         A    I don't know sir, Major Waldren,

3  and I'll even cite it.  It's pages 77 and 78.

4         MR.  ALLEN:  You  mean  Sergeant

5  Reese.  You said Sergeant Mace.

6         MR. SCHIFFERLE: I meant, I did.

7  Sergeant Reese.

8         (Laughter)

9         MR. MILLER:  Major Waldren refers

10 to this onpage 77 and 78.  He doesn't go into

11 detail, he just says in several occasions they

12 had taken the mace.  The mace has been taken

13 away from Sergeant Reese because of excessive

14 use.  He doesn't say whether it's allegation

15 or not but I would assume it's an allegation.

16 It doesn't say it's an allegation, but he does

17 his best, he just says it was taken away.

18        BY MR. SHIFFERLE:

19        Q    And you also mention based on what

20 you subsequently reviewed.  Subsequent to

21 preparing your report, that you learned some

22 details about the cameras or the camera

1    system?

2         A    Yes.

3         Q    Any of those details you learned
4    significant to your opinions in this case?

5         A    It has reinforced my opinion.  I
6    mean, they're not, the fact that they didn't
7    have a camera ready to shoot this thing at
8    all.  You know, that they had several cameras
9    and out of three cameras only one was working
10   and when they went to get it they did not take
11   the one that's working.  They took one that
12   wasn't working and that type of thing.  And
13   also, one other thing I should mention.  In
14   Major Waldren's deposition he's quite, well,
15   he's quite clear about several things.  He
16   discussed the cameras.

17        Also he's quite clear that the
18   failure to photograph the injuries of Mr.
19   Ingram was a violation of the jail's policy
20   and procedure and would add it is also a
21   violation of general accepted practice in the
22   field.  And also, Major Waldren states that if

1    he had known about the criminal convictions of

2    Sergeant Reese, that Sergeant Reese should not

3    have been working in the jail.

4         Q    Okay, let's get this marked and

5    cover up the exhibit sticker--

6         A    And if you'd like by the way,

7    excuse me, but again just so I'm being quite

8    specific with you, his opinion that Mr. Reese

9    should not have been working in the jail was,

10   I believe, on page 11 of his deposition and

11   should not have been working in the unit is I

12   believe on page 13 of his deposition.

13             MR. ALLEN:  Could we just have a

14   moment for just a minute.  Can I borrow him

15   for a sec.

16             MR. SCHIFFERLE:  Sure, sure.

17             MR. MILLER:  With Lieutenant

18   Hendrix what I found significant was he

19   discusses the cameras and how goofed up the

20   cameras were and whatever on pages 27, 32 and

21   34.  He specifically states on page 36 and 37

22   how it's policy to photograph inmate injuries